

# Loan Modification Agreement

LOAN NUMBER: ▮▮▮▮▮▮▮▮
PROPERTY ADDRESS:
    5613 BAY MEADOWS DR.
    FRISCO, TX 75034-4611

THIS LOAN MODIFICATION AGREEMENT ("Agreement"), made on 12/5/2014 (the "Modification Effective Date"), by and between JAMES D GRISHAM and YAMILETH D GRISHAM (the "Borrower(s)") and Wells Fargo Home Mortgage (the "Lender", together with the Borrower(s), the "Parties").

WITNESSETH
WHEREAS, Borrower has requested and Lender has agreed, subject to the following terms and conditions, to a loan modification as follows:

NOW THEREFORE, in consideration of the covenants hereinafter set forth and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged by the Parties, it is agreed as follows (notwithstanding anything to the contrary in the Note and Security Instrument dated 03/02/2007.)

1. The modified principal balance of my Note will include all amounts and arrearages that will be past due as of the Modification Effective Date (including unpaid and deferred interest, fees, escrow advances and other costs, but excluding unpaid late charges, collectively, "Unpaid Amounts") less any amounts paid to the Lender but not previously credited to the Modified Loan. The new principal balance of my Note will be $193,200.04 (the "New Principal Balance").

2. Interest at the rate of 6.250% will begin to accrue on the New Principal Balance as of 12/01/2014 and the first new monthly payment on the New Principal Balance will be due on 01/01/2015. Interest due on each monthly payment will be calculated by multiplying the New Principal Balance and the interest rate in effect at the time of calculation and dividing the result by twelve (12). Borrower agrees to make payments for the Modified Loan as outlined in the payment schedule below:

| Years | Interest Rate | Interest Rate Change Date | Monthly Principal and Interest Payment | Monthly Escrow Payment Amount | Total Monthly Payment | Payment Begins On | Number of Monthly Payments |
|---|---|---|---|---|---|---|---|
| 1-40 | 6.250 | 12/01/2014 | $1,096.87 | 698.37* | 1,795.24* | 01/01/2015 | 480 |

*The escrow payments may be adjusted periodically in accordance with applicable law and therefore my total monthly payment may change accordingly. This includes the escrow shortage over the first 60 month term as described in the summary section of the cover letter.

The above terms in this Section 2 shall supersede any provisions to the contrary in the Note and Security Instrument, including but not limited to, provisions for an adjustable, step or simple interest rate.

Borrower understands that, if I have a pay option adjustable rate mortgage loan, upon modification, the minimum monthly payment option, the interest-only or any other payment options will no longer be offered and that the monthly payments described in the above payment schedule for my Modified Loan will be the minimum payment that will be due each month for the remaining term of the loan. My Modified Loan will not have a negative amortization feature that would allow me to pay less than the interest due resulting in any unpaid interest being added to the outstanding principal balance.

3. EXTENSION. This Agreement hereby modifies the following terms of the Note and Security Instrument described herein above as follows:

- A. The current contractual due date has been extended from 08/01/2014 to 01/01/2015. The first modified contractual due date is 01/01/2015.

- B. The maturity date has been extended from 04/01/2037 to 12/01/2054.

- C. The amount of interest to be included (capitalized) will be U.S. $4,724.50.

- D. The amount of the Escrow Advance to be capitalized will be U.S. $7,054.29.

- E. The amount of Recoverable Expenses* to be capitalized will be U.S. $0.00.
  * Recoverable Expenses may include, but are not limited to: Title, Attorney fees/costs, BPO/Appraisal, and/or Property Preservation/Property Inspections.

- F. I agree to pay in full any amounts still owed under the Note and Security Instrument by the earliest of: (i) the date I sell or transfer an interest in the property, (ii) the date I pay the entire New Principal Balance, or (iii) the maturity date.

- G. Borrower agrees that certain amounts owed will not be capitalized, waived, or addressed as part of this Agreement, and will remain owed until paid. These amounts owed are referenced in the Cover Letter to this Agreement, which is incorporated herein, and are to be paid with the return of this executed Agreement. If these amounts owed are not paid with the return of this executed Agreement, then Lender may deem this Agreement void.

H.  Borrower will pay to Lender on the day payments are due under the Loan Documents as amended by this Agreement, until the Loan is paid in full, a sum (the "Funds") to provide for payment of the amounts due for : (a) taxes and assessments and other items which can attain priority over the Mortgage as a lien or encumbrance on the Property; (b) leasehold payments of ground rents on the Property, if any; c) premiums for any and all insurance required by Lender under the Loan Documents; To be added in paragraph fix the labeling (d) mortgage insurance premiums, if any, or any sums payable to Lender in lieu of the payment of mortgage insurance premiums in accordance with the Loan Documents; and (e) any community association dues, fees, and assessments that Lender requires to be escrowed. These items are called "Escrow Items". Borrower shall promptly furnish to Lender all notices of amounts to be paid under this paragraph. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be in writing. In the event of such a waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and , if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in the Loan Documents, as the phrase "covenant and agreement" is used in the Loan Documents.  If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under the Loan Documents and this Agreement and pay such amount and Borrower shall then be obligated to repay to Lender any such amount.  Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with the Loan Documents, and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this paragraph.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under the Real Estate Settlement Procedures Act ("RESPA"), and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with applicable law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA.  Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and applicable law permits Lender to make such a charge. Unless an agreement is made in writing or applicable law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Lender and Borrower can agree in writing, however, that interest shall be paid on the Funds. Lender shall provide Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by the Loan Documents, Lender shall promptly refund to Borrower any Funds held by Lender.

4. NOTE AND SECURITY INSTRUMENT. Nothing in this Agreement shall be understood or construed to be a satisfaction or release, in whole or in part of the Borrower's obligations under the Note or Security Instrument. Further, except as otherwise specifically provided in this Agreement, the Note and Security Instrument will remain unchanged, and Borrower and Lender will be bound by, and shall comply with, all of the terms and provisions thereof, as amended by this Agreement.

5. If included, the undersigned Borrower(s) acknowledge receipt and acceptance of the Truth in Lending statement.

6. If included, the undersigned Borrower(s) acknowledge receipt and acceptance of the Notice of Special Flood Hazard disclosure.

That the Borrower(s) on the above-referenced Mortgage Loan serviced by Wells Fargo Home Mortgage.

That the Borrower has experienced a financial hardship or change in financial circumstances since the origination of (his/her/their) Mortgage Loan.

That the Borrower did not intentionally or purposefully default on the Mortgage Loan in order to obtain a loan modification.

CORRECTION AGREEMENT: The undersigned Borrower(s), for and in consideration of the approval, closing and funding of this Modification, hereby grants Wells Fargo Home Mortgage, as lender, limited power of attorney to correct and/or initial all typographical or clerical errors discovered in the Modification Agreement required to be signed. In the event this limited power of attorney is exercised, the undersigned will be notified and receive a copy of the document executed or initialed on their behalf. This provision may not be used to modify the interest rate, modify the term, modify the outstanding principal balance or modify the undersigned's monthly principal and interest payments as modified by this Agreement. Any of these specified changes must be executed directly by the undersigned. This limited power of attorney shall automatically terminate in 120 days from the closing date of the undersigned's Modification.

IN WITNESS WHEREOF, the Parties hereto have executed this Agreement as of the Modification Effective Date.

By signing this Agreement the Borrower/Borrowers hereby consent to being contacted concerning their loan at any cellular or mobile telephone number they may have. This includes text messages and telephone calls including the use of automated dialing systems to contact any cellular or mobile telephone. The Borrower/Borrowers may be billed by the cellular or mobile carrier for any text messages that Wells Fargo Home Mortgage may send. Any calls Wells Fargo Home Mortgage places to the Borrower/Borrowers cellular or mobile phone may incur normal airtime charges assessed by the mobile carrier.

_____  
Wells Fargo Bank, N.A.

By: **Gina Thao**, Vice President Loan Documentation
_____

Date: Dec. 19, 2014

_____(Seal)  
JAMES D GRISHAM

Date: 12/9/14

_____(Seal)  
YAMILETH D GRISHAM

Date: 12/9/14

Wells Fargo Home Mortgage is a division of Wells Fargo Bank, N.A. ©2014 Wells Fargo Bank, N. A. All rights reserved. NMLSR ID 399801